JOSEPH BROWN *v.* ROBERT FOLWELL, ESTHER WILLIS and others.

A Cedar Swamp, of 33 acres, was devised by N. F. to his executors with directions to sell the same. On the 8th August, 1836, the executors made a deed of it to J. E. C. and on the same day J. E. C. made a deed of it to T. I. F., one of the executors. In August, 1843, T. I. F. gave a mortgage on it to J. B. In October, 1846 a bill was filed by R. F. against the said executors to set aside the said deeds, and in January, 1848, they were decreed to be void; and the decree directed that the cedar swamp be sold by a master; and it was so sold, in May, 1848, and E. W. purchased it at that sale. J. B. was not made a party to that suit. In June, 1848, J. B. filed his bill on the mortgage given to him by T. I. F.; and in September, 1848, a decree *pro con* was made for the sale of the mortgaged premises; and they were sold in January, 1849, and were bought by J. B. (leaving a balance due on his mortgage). R. F. and E. W. were not made parties to the said suit of J. B. E. W., after her said purchase at the master's sale, cut a part of the cedar growing in the swamp, and moved it to lands of a third person, where it was struck off at vendue to bidders; and J. B., after his purchase under the said decree on his mortgage, filed a bill against E. W. and said bidders, and obtained an injunction restraining the bidders from taking the wood so struck off to them, and restraining E. W. from further cutting. On the bill and the statements of the answer the injunction was dissolved.

On the 17th April, 1849, Joseph Brown, of Philadelphia, exhibited his bill, stating that one Thomas I. Folwell, of Philadelphia, being indebted to the complainant in $9000, for money lent and advanced, executed to the complainant a bond dated August 23, 1843, conditioned for the payment to the complainant of $9000 in one year, with interest payable half yearly. And that the said Thomas I. Folwell, being seized in fee, as he alleged, or of some other good and sufficient estate of inheritance of in and to a certain plantation and lots of land, in order to secure the payment of the said sum mentioned in the condition of the said bond, with the interest thereon, did, by mortgage duly executed bearing even date with the said bond, convey to the complainant, in mortgage, all the following plantation and lots and parcels of land, situate in the township of Woolwich, in the county of Gloucester, being lately the residence of the said Thomas I. Fol-

well, bounded as follows: (giving the boundaries); containing about 225 acres of land, meadow, cedar swamp and premises, be the same more or less. Also all that certiain lot of meadow ground, situate in the township aforesaid, bounded, &c., containing about 35 acres, be the same more or less; a part of which premises the said Thomas I. Folwell claims title to under the will of his father, Nathan Folwell, deceased; a part thereof the said Thomas I. Folwell purchased of Enos Henderson and wife, by deed dated March 8, 1836; a part thereof the said Thomas purchased of John E. Caldwell, by deed dated August 8, 1836; and a part thereof of Catharine Foldcraft, by deed dated April 25, 1835. That the part so purchased of John E. Caldwell contained 33 acres of valauble cedar swamp, which is described and bounded in and by the said deed from Caldwell as follows: Beginning at three cedars, thence by Hutchinson's line, so called, south 57 degrees east, 56 chains 40 links, thence north 75 degrees west, 37 chains 70 links; thence north 27 degrees west, 23 chains, 70 links, to the place of beginning; containing 33 acres of cedar swamp and cripple, be the same more or less.

That a large arrear of interest being due on the said bond and mortgage, this complainant, on the 16th June, 1848, filed his bill in this court against the said Thomas I. Folwell and his judgment creditors on attachment; and, in September, 1848, obtained a decree of foreclosure, and for the sale of the mortgaged premises, for the sum of $11,784, and $61 20 costs; upon which an execution was issued; and, on the 13th January, 1849, the said premises were sold, by one of the masters of this court, and were purchased by the complainant, for $7000, leaving a balance of between $5000 and $6000 due to the complainant on his said bond and mortgage.

That, about the time when the complainant purchased the said mortgaged premises, Robert Folwell the brother of the said Thomas, entered upon the lot of cedar swamp, and cut and took away a large quantity, supposed to be about 100,000 cedar rails, logs, poles, posts and stakes, the most of which have been hauled off and out of the said cedar swamp, upon adjoining land. That the complainant, residing in Philadelphia, had no knowledge of the said cutting until after he purchased the premises at the master's

sale, and after the removal aforesaid or some part thereof. That some time previous to the 9th of April, 1849, the complainant found that the said Robert Folwell had advertised the said rails, &c. to be sold at public sale on that day; which advertisement was published in a weekly paper printed at Woodbury, and is as follows: (giving the advertisement).

That the said Robert Folwell is represented to the complainant as insolvent, and does not own any property, so far as the complainant knows and is informed and believes, of any description, and is wholly unable to respond to the complainant in damages.

That the complainant attended, on the said April 9th, 1849, at the place of sale mentioned in the said advertisement, and deemed it his duty to state to the said Robert the circumstances of his title to the cedar swamp, and requested him to desist from the sale for one month, until the right of the complainant, or of said Robert or any other person, could be settled by agreement or reference to competent persons; but the said Robert refused to postpone the sale. That the complainant shewed to the said Robert a notice which he stated he should read to and distribute among the persons attending the sale, before the sale commenced, if the said Robert did not agree to a postponement; which the complainant did, and then left for Philadelphia. That the said notice given by the complainant was a printed handbill, as follows: (giving it at length). It is a notice that " the 60,000 cedar rails offered for sale by Robert Folwell" that day, " having been cut on property on which I (the complainant) had a mortgage, and for which I (the complainant) now have a deed, the public are hereby warned not to purchase said rails, as the subscriber (the complainant) claims the same, and will prosecute and hold responsible any purchaser or person who shall remove the same or any part thereof, until the right is fully settled in a court of law or equity," signed Joseph Brown.

That the complainant is informed and believes that the said Robert Folwell went on with the said sale, and that William Crispin, Bowman Lippincott, and others unknown to the complainant were purchasers at said sale.

That the cutting and taking away of said property from the said swamp is a great injury to the complainant, by depriving

him of the timber necessary for fencing his plantation ; and that the damage is beyond the mere value of the timber.

That the said Robert Folwell, combining, as the complainant is informed and believes, with Esther Willis, who, as the complainant is informed, claims title to the said swamp, &c, refuses to acknowledge the complainant's title to the said rails &c, but denies the complainant's title to the said 33 acres of cedar swamp. And the said Robert Folwell and Esther Willis pretend, that the deed from the said John E. Caldwell to the said Thomas I. Folwell was set aside and for nothing holden, by this court, in a cause depending between the said Robert Folwell, complainant, and the said Thomas I. Folwell and Joseph C. Pancoast, executors &c. of Nathan Folwell, deceased, defendants, on the 28th of January, 1848 ; and that the said cedar swamp was sold by order of this court, on the 25th May, 1848, by a master of this court, and purchased by the said Robert Folwell, in the name of the said Esther Willis, but for the use and benefit of the said Robert Folwell ; whereas the complainant charges that he had no notice of that suit ; that he was not made a party thereto, nor had he any knowledge, directly or indirectly, thereof. That, the said deed from John E. Caldwell to Thomas I. Folwell being dated August 8, 1836, and duly recorded on the same day, without any claim, or objection to the same, to the knowledge of the complainant, and from the number of years which had elapsed since the making and recording of the said mortgage to the complainant, which was known to the said Robert Folwell, and the recording whereof was lawful notice to every body, the complainant was entitled to have had notice of such suit between Robert Folwell and the said Thomas I. Folwell and Joseph C. Pancoast, executors as aforesaid, and that his rights could not be and were not affected by the decree in that suit.

That the complainant is informed, and therefore charges, that neither the said Thomas I. Folwell nor the said Pancoast appeared, or defended the said suit, or attended the examination of witnesses therein. That a decree *pro. con.* was taken in said suit, and the whole proceedings therein were *ex parte ;* whether by collusion between the said brothers and Pancoast, who is a brother-in-law, the complainant submits to the court.

That the first knowledge this complainant had of the pretense or claim of the said Robert Folwell or the said Esther Willis was at the sale of the premises, on the complainant's execution, on the said 13th January, 1849, after the sale was opened, when the said Robert Folwell gave notice, in substance, so far as the complainant could understand, that a portion of the cedar swamp included within the bounds given by the said execution was claimed by him for Esther Willis.

That the complainant has since understood that the said Robert Folwell claimed the said cedar swamp for the said Esther Willis, before the sale to the complainant, and, upon inquiry being made of the said Robert Folwell, he declared that the said tract of cedar swamp was not within the bounds of complainant's mortgage; but he declared to the complainant, after the sale to the complainant, that the said swamp was and is within the bounds of the complainant's mortgage.

That, from the time of the complainant's purchase, the complainant is informed and believes, the said Robert Folwell has been making great exertions in cutting and removing the said rails &c from and off the said cedar swamp.

The bill prays an account of the rails &c which have been cut; and that the defendants may be decreed to pay to the complainant the value of such portion thereof as has been sold; and an injunction restraining the defendants from committing any further waste or destruction of or upon the said cedar swamp, and from removing the rails &c. sold from the place where sold, and from carrying away other rails &c. from the said tract of cedar swamp; and that the rails &c. not sold, as well those lying on the said tract as those which have been removed from it, may be sold, and that the proceeds may be brought into court, to be paid to the complainant towards payment of the balance of his mortgage debt; and for such other and further relief &c.

Robert Folwell, William Crispin, Bowman Lippincott and Esther Willis are made defendants.

An injunction was allowed pursuant to the prayer of the bill.

The defendants put in their joint and several answer.

They admit the mortgage from Thomas I. Folwell to the complainant; and that it was recorded as in the bill stated; and that it embraced the cedar swamp of 33 acres which Thomas I. Folwell purchased of John E. Caldwell, by deed dated August 8, 1836, and recorded as in the bill stated.

They admit that the complainant, on or about June 16, 1848, filed his bill on the said mortgage, and, in September following, obtained a decree of foreclosure and for the sale of the mortgaged premises, for the sum stated in the bill; and that an execution was thereupon issued, and a sale made, as stated in the bill; but whether said mortgage debt was *bona fide*, or what amount was due on it, they have no knowledge.

That they were not, nor was either of them made parties to the said suit, nor had notice of the pendency thereof until the premises were advertised for sale under the said execution.

The defendant, Esther Willis, admits that she claims title to the 33 acres of cedar swamp mentioned in the bill. And the defendants say, that the said cedar swamp was a part of the real estate whereof Nathan Folwell died seized. That the said Nathan devised the same, with other lands, to his executors, with directions to sell the same and divide the proceeds as in his will directed, and appointed Robert Folwell, one of these defendants, Thomas I. Folwell, Joseph C. Pancoast, Samuel Cornley and Isaac Pine executors. That Pine, Cornley and the said Robert Folwell renounced the executorship; and that the said Thomas I. Folwell and Joseph C. Pancoast proved the will and took upon themselves the execution thereof.

That on or about July 5, 1836, the said acting executors made a pretended sale of the said cedar swamp to one John E. Caldwell, for the nominal consideration of $165, and on the 8th of August, 1836, executed to him a deed therefor. That the said sale was fraudulent, the consideration mentioned not being one-tenth of the value of the said cedar swamp at that time, and was in fact intended as a mere device and contrivance by which to equalize a fraudulent transfer of the said cedar swamp to Thomas I. Folwell, one of the said acting executors, to whom the said John E. Caldwell, on the same 8th day of August, and for the same nominal consideration of $165, conveyed the said premises.

And the defendants say, that the said Robert Folwell, afterwards, on the 12th October, 1846, filed his bill in this court against the said Pancoast and Thomas I. Folwell, to set aside the said pretended sale as fraudulent and void; and that such proceedings were thereupon had that, on the 28th January, 1848, it was by the decree of this court, among other things, decreed as follows : (giving the decree at length). It declares, that the sale made of the said cedar swamp by the said acting executors to John E. Caldwell, by deed dated August 8, 1836, for $165, and which property was on the same day conveyed by the said John E. Caldwell to the said Thomas I. Folwell, was made without any sufficient consideration, and in violation of the trust reposed in the said executors, and in fraud of the rights of the complainant in that suit ; and decrees that the said sale and conveyance to Caldwell, and the conveyance from Caldwell to the said Thomas I. Folwell be set aside ; and that the said cedar swamp be sold under the direction of a master for the best price that can be obtained for the same.

And the defendants, Esther Willis and Robert Folwell say that, on the 28th May, 1848, the said 33 acres of cedar swamp were, by virtue of the said decree, sold at public sale, and struck off to this defendant Esther Willis, upon the bid of this defendant Robert Folwell, who bought the same for her and at her request and as her agent, for the sum of $693. The said Thomas I. Folwell having previously to the said sale cut and carried off a large portion of the timber growing thereon. That the defendant Esther Willis paid the said purchase money to the master, who thereupon executed and delivered to her a deed for the said property, dated June 24th, 1848.

That it was while the said Thomas I. Folwell held the said cedar swamp under the said pretended conveyance from J. E. Caldwell that he executed the said mortgage to Joseph Brown, the complainant ; and they believe that the object of the said Thomas I. Folwell in including the said swamp in the said mortgage was, to provide against the contingency, anticipated by him, of said conveyance being set aside for fraud, by passing the legal title out of his hands ; and that the admissions of the complainant in his bill, that before the sale under his mortgage the said

Thomas I Folwell stated that the said swamp was not included in said mortgage, and that he was first informed that it was so included after he had purchased the mortgaged premises, confirms these defendants in their said belief, and shows that he did not understand that at the sale he was buying the said swamp, and that, therefore, the purchase money he gave was given for the other premises, not including the said swamp.

And these defendants insist, further, that inasmuch as the deeds, from the said acting executors to J. E. Caldwell, and from said Caldwell to Thomas I Folwell, were both on record at the time said mortgage was given, and bore on their face the badges of fraud, the complainant, even if he meant to take this mortgage on the swamp, was chargable with notice that the said pretended title of Thomas I. Folwell to the said swamp was fraudulent and void; and that the complainant is not entitled to be considered in this court as a *bona fide* mortgagee without notice of defect of title.

The defendants admit that the complainant procured an execution to be issued on the decree obtained on his mortgage and that he became the purchaser of the mortgaged premises at the sale under the said execution, embracing the said cedar swamp and a large amount of other real estate, for $7000, which, the defendants believe, was little more than half its real value without the cedar swamp.

The defendant Robert Folwell says, that he attended said sale and, as the agent of the defendant Esther Willis and at her request, forbade the sale of the cedar swamp; gave public notice to the bidders and to the said complainant that the said Esther was the owner thereof; and read the decree of this court setting aside the said deed to John E. Caldwell and the said deed to Thomas I. Folwell; and that the master who made the said sale also stated to the same persons present at the sale, publicly, that the title out of which the complainant's mortgage had grown had been set aside as fraudulent, and the said cedar swamp had been subsequently sold under the decree of this court, and purchased by the said Esther Willis.

This defendant admits that he entered upon the said cedar swamp and cut and took away a large quantity of cedar rails, logs,

poles, &c., as charged in the bill, and caused the same to be hauled off said premises, and sold the same. That they were removed from the said premises a distance of half a mile, and piled up on the fast land for the purpose of being sold; and that schedule A., annexed to this answer, contains a true account of the quantities of each kind thereof, and of the prices at which they were sold, and the names of the persons to whom sold, and the expenses of cutting and carting the same to the fast land and of selling the same; but that he acted, in all this, as the agent of the said Esther Willis, who was and is the owner of the said swamp, and at her request and by her direction. That he does not know whether the complainant had knowledge of the cutting or not, but that the same was done openly, and in the exercise of what he deemed the understood right of the said Esther Willis. That the complainant's tenants, who lived on complainant's farm adjoining, knew of the said cutting and carrying away at the time; and the complainant knew of the cutting and carrying away, at the time and before the said mortgaged premises were sold; and several conversations were had between this defendant, agent as aforesaid, and W. N. Jeffers, solicitor and counsel of the complainant, about the said cutting and the said cedar swamp, at the time of and previous to the sale of said mortgaged premises; and that the said sale was made upon public notice by advertisements in Woobury and Camden, and also in Philadelphia; which advertisements, he admits, were in the form and language set out in the bill.

The defendant Esther Willis says, that the said cutting, carrying away and selling were by her direction and authority; and that the defendant Robert Folwell was employed by her to attend to her business.

The defendants Robert Folwell and Esther Willis admit that the said Robert is not a man of much property; though they deny that he is an irresponsible man as charged in the bill; but they say that the said Esther is the responsible person, who is able and willing to respond, &c.; and that she is a person of property, able to answer to any amount for damages that may be adjudged, &c.

The defendant Robert Folwell admits that the complainant

38

attended the said sale of rails, &c., and gave some such notice as stated in his bill.

The defendants Crispin and Lippincott admit that they were purchasers at said sale &c.

The defendants admit that the cutting and taking away of said property from the cedar swamp would be an injury and damage to the complainant if his title to said swamp was valid; but they deny that he has a valid title to the same, and insist that the title is in the defendant Esther Willis.

The defendants Robert Folwell and Esther Willis deny that the cedar swamp was purchased by the said Robert in the name of the said Esther for his own use and benefit; but say that the said purchase was made for the sole and exclusive use and benefit of the said Esther; and that the said Robert has no other interest in the said premises or the property taken therefrom than what he has as the agent of the said Esther, who is the exclusive owner thereof.

The defendant Robert Folwell admits that the complainant was not made a party to the bill filed against Thomas I. Folwell and Joseph C. Pancoast to set aside the deeds to John E. Caldwell and to Thomas I. Folwell; and that the reason was that this defendant had no knowledge of the fact that the said mortgage from Thomas I. Folwell to the complainant embraced the said cedar swamp; that though the said mortgage was on record, it did not particularly describe the said cedar swamp by metes and bounds; and this defendant did not know or believe that it embraced said swamp; and that he had no suspicion of such being the fact until he saw the advertisements, a few days before the sale under the complainant's mortgage; and that then, on inquiring of the solicitor and counsel of the complainant, at the time of the sale, whether it did embrace the said swamp, the said solicitor and counsel told him it did not, and tried to dissuade the said Robert from recording the decree setting aside the said deeds, as aforesaid; and the complainant, after he had bought in the mortgaged premises, told this defendant that he (the complainant) did not know whether they embraced the said swamp or not; and this defendant attended the sale, and gave the notice forbidding any sale of the cedar swamp and asserting Esther

Willis's title, out of abundant caution, as he had not been able to satisfy himself whether the said swamp was embraced in the mortgage or not; but thought the description of the property broad enough to embrace it.

The defendants Robert Folwell and Esther Willis say, that at the time of the decease of the said Nathan Folwell they both resided in Philadelphia; and that they continued to reside there until 1846, in which year they both removed in New Jersey, where they now reside; and that, not being made parties to the complainant's foreclosure suit, they had no suspicion, until after his said decree and the advertisements for the sale of the mortgaged premises under it, that he had any pretence of claim or interest in the said cedar swamp.

The defendant Robert Folwell admits, that neither Thomas I. Folwell nor Joseph C. Pancoast appeared or defended the said suit brought by this defendant to set aside the said deeds to to John E. Caldwell and to Thomas I Folwell, or attended the examination or witnesses in the said cause, and that a decree *pro confesso* was taken against them; but he denies that there was any collusion between him and them or either of them; and denies that the first knowledge the complainant had of the claim of the said Esther was on the sale of the premises upon his execution.

The defendants Esther Willis and Robert Folwell say, that all the rails, &c., so cut were carried away; and that none thereof, of any kind, now remain on the said cedar swamp. They admit that about half of the said cedar swamp has been cut off; and that the said Esther intends to cut off the remainder.

On the bill and answer a motion was made to dissolve the injunction.

*T. H Dudley* in support of the motion. He cited 1 *John. Ch.* 318; 8 *Ves. J.* 90, *note ;* 2 *Green's Ch.* 282, 234, 429; 3 *Ib.* 177, 452; 6 *John. Ch.* 500; 7 *John. Ch.* 317; 1 *Pet. C. C. Rep.* 356; 2 *Bac. Ab.* 688; 1 *P. Wms.* 527; 5 *John. Ch.* 169; 3 *Atk.* 262; *Ambl.* 54; 6 *Ves. Jun.* 51; 3 *Paige,* 213; *Story's Eq. Jur. sec.* 909; 7 *Ves. Jun.* 305; 19 *Ib.* 152; *Sax-*

*ton's Ch.* 476, 454 ; 3 *Bin. Rep.* 54 ; 4 *Ib.* 43 ; 2 *Halst. Rep.*
175 ; 6 *Ib.* 385, 393 ; 6 *Bin. Rep.* 118 ; 2 *Ib.* 466 ; 1 *Gallison,*
41 ; 2 *Sugd. on Vend.* 335, 542, 3, 4.

*W. N. Jeffers,* contra.

THE CHANCELLOR. For the present the injunction will be
dissolved except as to further waste.

As to the rails, &c., which have been cut, they have been re-
moved from the swamp, and have been struck off to bidders at a
public vendue, at the place to which they were so removed. It
is asked that the injunction be continued to prevent the bidders
from taking them away from that place. If the injunction in this
respect should be continued, it would be proper, the title being
in dispute, that the court should direct a sale, and that the pro-
ceeds be brought into court to abide the event of the suit. But
I see no good reason for this course. Esther Willis is responsible
in trespass, if it be a trespass on property of the complainant,
and is able to respond. And I am inclined to think that the in-
junction should be dissolved altogether. As to future cutting,
the complainant would have the same remedy above mentioned,
if he is in possession. If he is not, and it must be taken, under
the pleadings, that he is not, ejectment and rule to stay waste
will protect him. The title is in dispute ; no action at law has
been commenced ; Esther Willis is able to respond ; and there is,
to say the least, nothing persuasive in the case, as it appears by
the bill and answer, to induce the court to continue an injunc-
tion.

The injunction was afterwards wholly dissolved.